Filed 5/15/15  P. v. Villalobos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D066419 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF32714) |
| JOSE G. VILLALOBOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Donnell B. Donnelly, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Guadalupe Villalobos of one count of stalking in violation of a restraining order (Pen. Code, § 646.9, subd. (b)),[1] two counts of willful disobedience of a court order (§ 166, subd. (a)(4)), one count of resisting a peace officer (§ 148, subd. (a)(1)), and one count of misdemeanor vandalism (§ 594, subd. (a)). The jury acquitted Villalobos of one count of making a criminal threat. (§ 422, subd. (a).)

The court sentenced Villalobos to a term of four years in state prison for stalking, six months in county jail for each conviction of willful disobedience of a court order, one year in county jail for resisting a peace officer, and one year in county jail for vandalism. Each sentence was ordered to run concurrently. The court suspended Villalobos's state prison sentence and placed him on probation for three years. As a condition of his probation, Villalobos was required to serve one year in county jail. The remaining jail sentences would be satisfied by this term.

Villalobos appeals. He contends the evidence is insufficient to support his convictions for stalking and willful disobedience of a court order.[2] We disagree and affirm the judgment.

FACTS

Maria de Jesus Villalobos (Maria) lives with her family in Westmorland, California. Villalobos is her son. In early 2014, Villalobos became angry with his sister Sandra because she was making noise in the kitchen. Villalobos called Sandra insulting

---

[1]    Further statutory references are to the Penal Code.

[2]    Villalobos does not challenge any other aspect of the judgment, including his convictions for resisting a peace officer and vandalism.

names and broke a potted plant. When Villalobos is angry, he sometimes picks up a kitchen knife. Villalobos said "fuck your mother" and "I hope you die." The next month, Villalobos became angry with Maria because she told him to stop making telephone calls to Mexico. Villalobos threw the telephone to the ground, breaking it. Shortly afterwards, Maria obtained a temporary restraining order against him. The restraining order required Villalobos to move out of Maria's house. It also required him to stay 100 yards away from Maria and her house.

Several days later, Maria returned from an early morning walk and noticed Villalobos lying on the ground behind her house. At some point, Maria also saw him leaving her house carrying his radio. Later he knocked on the door or window. He said he wanted to retrieve some of his CDs. Maria told him to leave and did not let him in. Villalobos then spray painted the word "bitch" across her door and left. Maria called police. An officer from the Westmorland Police Department, Fred Beltran, arrived and took photographs of the door. Beltran attempted to find Villalobos, but could not.

The next day, Maria saw Villalobos at her house again after she returned from her walk. Maria told him he should not be there. She said she would call the police. Villalobos became angry. He said he would break Maria's windows and door and "burn down the house" if she called the police. Villalobos's words scared Maria, but she was not sure whether he would actually carry out these threats. Maria watched him take his belongings to a vacant lot across the street. Fifteen minutes later she called police.

Beltran responded, met Villalobos in the vacant lot, and told him he was being placed under arrest for violating the restraining order. Villalobos resisted at first, but

3

relented when Beltran threatened him with his Taser. Beltran placed Villalobos in his patrol car, in which he attempted to kick out the rear windows. Beltran gave Villalobos a cigarette, which calmed him down. Villalobos told Beltran he had nowhere to go.

DISCUSSION

I

Villalobos first challenges the sufficiency of the evidence to support his conviction for stalking. Our standard of review is well settled: "The question, of course, is not whether there is evidence from which the jury could have reached some other conclusion, but whether, viewing the evidence in the light most favorable to respondent, and presuming in support of the judgment the existence of every fact the trier reasonably could deduce from the evidence, there is substantial evidence of appellant's guilt—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Falck* (1997) 52 Cal.App.4th 287, 297.) In general, "the testimony of a single witness is sufficient evidence to support the verdict." (*People v. Zavala* (2005) 130 Cal.App.4th 758, 766.)

The statute defining the offense of stalking provides, in relevant part, as follows: "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . ." (§ 646.9, subd. (a).) The elements of the offense are therefore "(1) following or harassing another person; (2) making a credible threat; and (3) intending to place the victim in reasonable fear for her

4

safety." (*People v. Uecker* (2009) 172 Cal.App.4th 583, 594.) Where, as here, a defendant has been convicted under subdivision (b) of the statute, proof of "a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party" is required. (§ 646.9, subd. (b).)

The Attorney General contends that Villalobos's conduct constituted "harassing" rather than "following" for purposes of the statute. (See § 646.9, subd. (a).) The statute defines harassment as engaging "in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e).) A course of conduct is "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9, subd. (f).)

We conclude the evidence was sufficient to sustain Villalobos's conviction for stalking. He repeatedly approached Maria's house in the early morning hours, in violation of the restraining order protecting her. On the first occasion, he entered the house without permission and later spray painted the word "bitch" on Maria's door when she would not let him back in. On the second occasion, Maria told him to leave and he became angry. He threatened violence and told Maria he would "burn down the house" if she called the police.[3] These actions constitute a "course of conduct" for purposes of the statute. (§ 646.9, subd. (f).) Even though she did not take any additional security

---

[3]     Contrary to Villalobos's contention, his statement that he would "burn down the house" could reasonably be viewed as a threat to physically harm Maria and her family because they lived in the house. Setting fire to the house would place their physical well-being (and their lives) in serious danger.

precautions, and she was not sure Villalobos would actually follow through on his threats, the jury could reasonably conclude that Maria was seriously alarmed or annoyed by his conduct. (§ 646.9, subd. (e).)  Maria called police after both encounters with Villalobos and sought their assistance.  He had a history of violent and confrontational behavior, including reaching for a kitchen knife during arguments.  Maria was scared of him after his threat to burn her house down.  The evidence was sufficient to find that Villalobos "harassed" Maria.  (*Ibid.*)

Villalobos argues there was no showing of "substantial emotional distress" and therefore the conviction for stalking may not stand.  (See *People v. Ewing* (1999) 76 Cal.App.4th 199, 211-212.)  The statute, however, no longer requires a showing of "substantial emotional distress" to establish harassment.  (§ 646.9, subd. (e); see Stats. 2002, ch. 832, § 1.)  The statute also does not require that the victim be in *sustained* fear, as Villalobos claims. (See § 646.9, subds. (a), (g); cf. § 422, subd. (a).)  His arguments are unavailing.

Villalobos also argues the jury's acquittal on the charge of making a criminal threat under section 422, subdivision (a), shows that the evidence was insufficient for the jury to find a "credible threat" for purposes of section 646.9, subdivision (a).  The evidence necessary to prove the two, however, is not identical.  The offense of making a criminal threat requires elements not necessarily present in a credible threat, including that the threatened act "will result in death or great bodily injury to another person;" the threat "is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the

6

threat;" and the threat causes the victim "reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety." (§ 422, subd. (a).) By contrast, a credible threat is "a verbal or written threat, . . . or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family." (§ 646.9, subd. (g).) Because the elements of threatened death or great bodily injury, immediate prospect of execution, and sustained fear for the victim's safety are not present in the definition of credible threat, the jury could reasonably acquit Villalobos on the charge of making a criminal threat but find a credible threat sufficient for a conviction of stalking.

Similarly, based on the substance and manner of Villalobos's threat to burn down Maria's house, the jury could reasonably infer he intended to place Maria in reasonable fear for her safety or the safety of her immediate family. (§ 646.9, subd. (a).) The evidence supports Villalobos's conviction for stalking. (*Ibid.*)

## II

Villalobos also contends the evidence is insufficient to support his conviction for willful disobedience of a court order. (§ 166, subd. (a)(4).) Again, our standard of review for sufficiency of the evidence is well-settled. (See *People v. Greenfield* (1982) 134 Cal.App.3d Supp. 1, 5; see also *People v. Falck, supra*, 52 Cal.App.4th at p. 297.) Section 166, subdivision (a)(4), prohibits "[w]illful disobedience of the terms as written

7

of any process or court order or out-of-state court order, lawfully issued by a court, including orders pending trial."  The elements of this offense are the following: "the court order was made; the defendant had knowledge of the order; the defendant possessed the ability to comply; and that the defendant disobeyed the order."  (*Greenfield*, at p. Supp. 4.)

Villalobos contends there was inadequate proof that he had notice or knowledge of the temporary restraining order protecting Maria.  He contends "the only evidence as to the protective order was Officer Beltran's review of a protective order presented by [Maria]."  He acknowledges, however, that the protective order itself was admitted into evidence.  As the Attorney General notes, the protective order contained a proof of service, signed under penalty of perjury, showing personal service on Villalobos.  In his reply, Villalobos does not directly respond to this evidence.  Based on the proof of service, a reasonable jury could find he had notice and knowledge of the protective order. Villalobos's claim that "[t]his record is devoid of evidence appellant received the restraining order" is therefore meritless.

Villalobos points to section 836, but his reliance on that statute is unpersuasive. Section 836 regulates the activities of arresting officers in the context of an alleged violation of a restraining order; it does not dictate the type or quantum of proof necessary at trial on such a violation.  (§ 836, subd. (c); see 4 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Pretrial Proceedings, § 32, p. 271.)  Moreover, the evidence shows section 836 was satisfied at the time of Villalobos's arrest.  That section provides, in relevant part, as follows:  "The person against whom a protective order has been issued shall be

8

deemed to have notice of the order if the victim presents to the officer proof of service of the order, the officer confirms with the appropriate authorities that a true copy of the proof of service is on file, *or* the person against whom the protective order was issued was present at the protective order hearing or was informed by a peace officer of the contents of the protective order."  (§ 836, subd. (c)(2); italics added.)  Here, Beltran testified that the restraining order in evidence was a true and correct copy of the restraining order that Maria gave him on the day before Villalobos's arrest.  That order included a proof of service on Villalobos.  Because "the victim present[ed] to the officer proof of service of the order," section 836 was satisfied.  (§ 836, subd. (c)(2).)

## DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

9